FILED

JUN 1 2 2013


CLERK

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| KALI KROONTJE | Civ. No. 13- 4066 |
|---|---|
| Plaintiff, | |
| vs. | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| CKE RESTAURANTS INC.; DORO INC.; HARDEE'S FOOD SYSTEMS L.L.C.; and HARDEE'S RESTAURANTS L.L.C. Defendant. | |

COMES NOW, Plaintiff Kali Kroontje, by and through her counsel Pamela R. Bollweg, and for her cause of action against Defendants, CKE Restaurants Inc., Doro Inc., Hardee's Food Systems L.L.C., and Hardee's Restaurants L.L.C., hereby states and alleges as follows:

## PARTIES

1. Plaintiff Kali Kroontje is a citizen of Sioux Falls, Minnehaha County, South Dakota.

2. Defendant CKE Restaurants Inc., a Deleware corporation owns and operates Hardee's Restaurants throughout the United States.

3. Defendant Doro Inc., a Wisconsin corporation owns and operates Hardee's Restaurants throughout the United States.

4. Defendants Hardee's Food Systems L.L.C. is a Deleware corporation doing business as Hardee's restaurants in South Dakota.

5. Hardee's Restaurants L.L.C. is a Delaware corporations doing business as Hardee's restaurants in South Dakota.

## JURISDICTION

6. Plaintiff brings this action of sex discrimination and constructive discharge under Title VII of the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C § 2000e et seq.; The Civil Rights Act of 1991 (CRA), 42 U.S.C.A §1981a et. seq.; South Dakota Human Rights Act (SDHRA), SDCL § 20-13-10; and common law tort of assault/battery, Intentional Infliction of Emotional Distress, Negligent Infliction of Emotional Distress, Negligent Retention, and Negligent Supervision

7. This Court has jurisdiction pursuant to the following statutes:

   a. 28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

   b. 28 U.S.C. § 1367, which gives the district court supplemental jurisdiction over state law claims; and

   c. 28 U.S.C. § 1332, which gives the Court jurisdiction based upon the diversity of the parties. The amount in controversy exceeds the sum of $75,000.

## VENUE

8. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

## ADMINISTRATIVE PROCEDURE

9. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

10. On or about January 27, 2012, Plaintiff filed a charge of discrimination with the South Dakota Department of Labor, Division of Human Rights (SDDHR).

11. On or about January 30, 2012 SDDHR cross filed the said charge of discrimination with the Equal Employment Opportunity Commission (EEOC).

12. On or about January 7, 2013, EEOC notified Plaintiff of their finding of Probable Cause for discrimination.

13. On or about January 7, 2013, Plaintiff and Defendants engaged in conciliation efforts through the EEOC.

14. On or about March 14, 2013, conciliation efforts failed and Plaintiff received a notice of right to sue from the EEOC, a copy of which is attached as Ex. A.

## FACTS RELEVANT TO ALL CLAIMS

15. Plaintiff incorporates and restates each of the above paragraphs as is fully set forth herein.

16. Defendants are employers with more than fifteen employees.

17. Plaintiff was hired by Z'Kota Grille in Sioux Falls, SD in September 2010. Z'Kota Grille was acquired by Defendants shortly thereafter, and all employees including Plaintiff became an employee of Defendants. Plaintiff was an employee of Defendants until July 8, 2011, when she was forced to quit her employment because of an ongoing hostile work environment and retaliation.

18. Plaintiff was hired to work at Z'Kota Grille as a part-time crew member at the age of 15.

19. Plaintiff's job duties included greeting guests, taking orders and entering them into the point of sales terminal accurately, suggesting and answering menu questions, assembling orders, assuring quality products, thanking guests and inviting them to return, keeping sales area clean organized and stocked, cleaning dining room tables and seating, cleaning and stocking restrooms, cleaning up spills immediately, and maintaining a cooperative and harmonious working relationship with management and fellow team members.

20. Plaintiff was not trained regarding Defendants' sexual harassment policy or procedure.

3

21. In October 2010, Plaintiff met Shannon Manninger, a training supervisor employed by Defendants.

22. In October 2010, Manninger and his team traveled from corporate offices in Wisconsin to train employees at a location in Sioux Falls, SD that was newly acquired by Defendants.

23. Plaintiff understood that Manninger held a supervisory position with Defendants and had authority over her employment.

24. Shannon Manninger is approximately twenty years older than Plaintiff.

25. Manninger befriended and flirted with Plaintiff in an open and obvious manner in the workplace starting in October 2010.

26. Manninger returned to Sioux Falls, SD to provide additional trainings in December 2010.

27. Manninger raped Plaintiff on or around December 9, 2010, and on or around December 13, 2010.

28. Under false pretenses, Manninger as Defendants' supervisory employee, posed as Plaintiff's father and lured her away from school.

29. In December 2010, several of Defendants' managers and supervisors, viewed inappropriate text messages sent from Manninger to Plaintiff.

30. In December 2010, Defendants' supervisors/managers told Manninger to stop flirting with Plaintiff because she was a teenager.

31. In December 2010, Defendants' supervisors/managers told Manninger to leave Plaintiff alone because she was only 15.

32. After these messages were discovered by Defendants' supervisors/managers, Manninger told Plaintiff that they would have to refrain from seeing each other for a period of time.

33. On or around December 20, 2010, Plaintiff's parents called Defendants' store manager Les Anderson and Human Resource Director Patti Harrington to report the rapes.

34. Manninger was discharged from his employment in December 2010.

35. On or around January 19, 2011, Plaintiff's parents called Sioux Falls Police Department to report the rapes.

36. Manninger was arrested in February 2011.

37. Manninger was sentenced to fifteen years for Rape in the 4th Degree and imprisoned at South Dakota State Penitentiary in August 2011.

38. Manninger's criminal conviction was publicly known through media reports.

39. Customers and employees inquired about Manninger's conviction while Plaintiff was working.

40. Plaintiff remained employed with Defendants through this time until July 8, 2011.

41. Plaintiff requested to work on the day shift with store manager Les Anderson, and his daughter.

42. Plaintiff turned 16 years of age in January 2011, and started to work longer hours.

43. In May 2011, Plaintiff was abruptly reassigned to working night shifts and her shift managers changed.

44. Defendants' shift manager immediately engaged in persistent and pervasive verbal harassment of Plaintiff asking if Plaintiff was the one involved with Manninger.

45. Defendants' shift manager engaged in persistent and pervasive harassment inundating Plaintiff with assignments to menial work duties such as scrubbing down the lobby and constantly cleaning the bathrooms.

46. A co-worker on the night shift, verbally harassed Plaintiff constantly asking if Plaintiff "…was the 15 year old involved with Manninger."

47. Other night shift co-workers shunned Plaintiff, whispered when she was near, and did not include her as a team member.

48. A night shift manager verbally harassed Plaintiff, asking if Plaintiff thought she was Anderson's favorite and asking if Plaintiff thought that she could not be fired by someone else.

49. Plaintiff immediately notified Anderson of these occurrences of harassment and demotion in her work duties.

50. After reporting several harassing incidents by customers while cleaning the men's bathroom, Anderson told her to put on her headphones so she would not be distracted by the customers.

51. After Plaintiff reported the ongoing verbal harassment by managers and co-employees on night shift to Anderson, no corrective actions were taken.

52. Plaintiff asked Anderson to switch her shifts back to day shift so she could continue to perform her work in a safe environment. Again, no corrective action was taken.

53. Plaintiff obeyed her night shift managers, performed duties as assigned, and never received any performance related discipline during her employment.

54. Defendants did not train their managers, supervisors, or any employees on sexual harassment policy and procedures.

55. Defendants did not train their managers and supervisors to manage the public nature of the rapes and to handle Plaintiff's return to work.

56. Because of this severe ongoing and pervasive hostile work environment, Plaintiff's working conditions became so intolerable that she was forced to resign.

57. The trauma caused from this hostile work environment caused Plaintiff to undergo ongoing medical treatment.

## COUNT I
*Harassment, Hostile Work Environment, Constructive Discharge by Supervisors, Violation of Title VII*
*Violation of SDCL § 20-13-10*

58. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

59. Plaintiff suffered a hostile work environment because of the actions and inactions of Defendants' supervisors and those holding authority over Plaintiff's employment, described herein. Plaintiff suffered a hostile work environment based on her sex, which was permeated with discriminatory intimidation, ridicule, and insult and sufficiently severe and pervasive to alter Plaintiff's working conditions.

60. Plaintiff was constructively discharged by Defendants, due to the actions and inactions of Defendants' supervisors and persons who hold positions of authority.

61. Plaintiff gave immediate notice to Defendants on multiple occasions of physical and verbal intimidation by other Defendants' supervisors and persons holding authority over plaintiff's employment.

62. Defendants did not engage in corrective action with other offending Defendants nor was a good faith effort made in providing a reasonable accommodation to Plaintiff.

63. Plaintiff requested a safe working environment from Defendants' supervisor Les Anderson, including, but not limited to switching from night shift back to day shift.

64. Defendants did not engage in a good faith effort in providing a safe working environment for Plaintiff.

65. Defendants are mandated to investigate harassment complaints and failed to do so.

66. Because of Defendants' failure to take prompt and remedial action, Plaintiff's working conditions became so intolerable that she was constructively discharged from her employment with Defendants.

67. The effect of the policies and practices pursued by the Defendants as alleged above has limited, classified, and discriminated against Plaintiff in ways that jeopardized her job, deprived her of employment opportunities, and otherwise adversely affected her status as an employee because of her gender.

68. Based on that information and belief, Plaintiff alleges that the discriminatory conduct of Defendants was willful, malicious, fraudulent, oppressive, and in conscious disregard of the rights of Plaintiff. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

**COUNT II**
*Harassment, Hostile Work Environment, and Constructive Discharge*
*by Co-Workers*
*Violation of Title VII*
*Violation of SDCL § 20-13-10*

69. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

70. Plaintiff suffered a hostile work environment because of the actions and inactions of Defendants' employees, described herein. Plaintiff suffered a hostile work environment based

8

on her sex, which was permeated with discriminatory intimidation, ridicule, and insult and sufficiently severe and pervasive to alter Plaintiff's working conditions.

71. Plaintiff was constructively discharged by Defendants, due to the actions of co-workers and inactions of Defendants' supervisors and managers.

72. Plaintiff engaged in Defendants' process of initiating harassment complaints by notifying supervisor Anderson of each instance of harassment suffered from Defendants' co-workers, though she was not trained to do so.

73. Defendants had actual knowledge of ongoing, severe and pervasive harassment of Plaintiff.

74. Plaintiff requested a safe working environment from Defendants' supervisor Les Anderson, including but not limited to switching from night shift back to day shift.

75. Defendants did not take any prompt or remedial action to investigate these assertions of harassment or to secure a safe working environment for Plaintiff, by breaching their duty of care.

76. Plaintiff lodged harassment complaints from May 2011 to July 2011.

77. Because of Defendants' inaction in taking prompt and remedial action for co-worker harassment, which forced Plaintiff to work in intolerable working conditions created by Defendants, Plaintiff was forced to resign on July 8, 2011.

78. Based on that information and belief, Plaintiff alleges that the discriminatory conduct of Defendants was willful, malicious, fraudulent, oppressive, and in conscious disregard of the rights of Plaintiff. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

## COUNT III
### Retaliation
### Violation of Title VII
### Violation of SDCL § 20-13-10

79. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

80. Plaintiff was abruptly reassigned to work on night shifts in May 2011.

81. Defendants' supervisors/managers and co-employees started to immediately harass Plaintiff, and created an ongoing hostile and abusive working environment.

82. Plaintiff was relegated to perform menial tasks.

83. Plaintiff repeatedly complained to Defendant's manager about this unlawful harassment and unsafe work environment.

84. Defendants did not take any steps to correct and discipline the discriminatory behavior of Plaintiff's co-employees and other supervisors and acquiesced to her demotion in work duties.

85. Plaintiff lodged complaints of unlawful employment practices from May 2011 to July 2011. Seeing no corrective action and being forced to work in the intolerable working conditions created by Defendants, Plaintiff was forced to resign on July 8, 2011.

86. Based on that information and belief Plaintiff alleges that the discriminatory conduct of Defendants was willful, malicious, fraudulent, oppressive, and in conscious disregard of the rights of Plaintiff. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

## COUNT IV
### Negligent Retention of Employees

87. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

88. Defendants came to know about Manninger's predatory behavior and other inappropriate acts for a supervisor overseeing the work of minor employees before the statutory rapes of Plaintiff.

89. Defendants were negligent in continuing to employ Manninger with knowledge of his predatory propensities.

90. If Defendants would have taken immediate action in terminating Manninger for engaging in these predatory behaviors, the statutory rapes of Plaintiff would not have occurred.

91. Plaintiff suffered damages as a direct and proximate result of Defendants' negligence.

92. Based on that information and belief, Plaintiff alleges that the discriminatory conduct of Defendants was willful, malicious, fraudulent, oppressive, and in conscious disregard of the rights of Plaintiff. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

## COUNT V
*Negligent Supervision of Employees*

93. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

94. Defendants came to know about Manninger's predatory behavior and other inappropriate acts for a supervisor overseeing the work of minor employees before the statutory rapes of Plaintiff.

95. Defendants were fully aware of the statutory rapes by a supervisory employee in December 2010.

96. Defendants were fully aware of the fact that Plaintiff remained employed at Defendants' store until July 8, 2011.

97. Defendants were fully aware of the public nature of these incidents.

98. Defendants took no steps to secure a safe working environment for Plaintiff, knowing the public nature of the events and the potential of Plaintiff's harassment by Defendants' supervisors and co-workers.

99. Defendants did not train their managers, supervisors, or any employees on sexual harassment policy and procedures.

100. Defendants did not train their managers and supervisors to manage the public nature of the rapes and to handle Plaintiff's return to work.

101. Because of Defendants' negligence in preventing foreseeable workplace harassment, Plaintiff suffered intolerable working conditions, was re-victimized with each occurrence of harassment, and was forced to resign.

102. Plaintiff suffered damages as a direct and proximate result of Defendants' negligence.

103. Based on that information and belief Plaintiff alleges that the discriminatory conduct of Defendants was willful, malicious, fraudulent, oppressive, and in conscious disregard of the rights of Plaintiff. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

### COUNT VI
*Assault/Battery*

104. Plaintiff incorporates and restates each of the above paragraphs as if fully set forth herein.

105. Defendants were fully aware of Manninger's predatory behavior towards the minor Plaintiff in the workplace, before the rapes.

106. Defendants were fully aware of the rapes of Defendants' minor employee by Defendants' supervisory employee in December 2010.

107. Under false pretenses, Manninger as Defendants' supervisory employee, during business hours, posed as Plaintiff's father and lured her away from school, and raped her.

108. Plaintiff believed that she may lose her job if she did not comply with Manninger's requests.

109. Based on that information and belief Plaintiff, alleges that the discriminatory conduct of Defendants was willful, malicious, fraudulent, oppressive, and in conscious disregard of the rights of Plaintiff. As a result of the physical and emotional trauma that she continues to suffer, punitive damages are appropriate in an amount according to proof.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

(1) For compensatory, back pay, future pay, general, special, liquidated, and punitive damages in an amount to be determined by the jury to compensate Plaintiff for all injuries sustained as a result of Defendants' conduct;

(2) For Plaintiff's costs and disbursements herein;

(3) For prejudgment and post-judgment interest;

(4) For attorney's fees, reasonable expert witness fees, and costs pursuant to 42 U.S.C § 2000e-5 (Title VII), The Civil Rights Act of 1991 (CRA), 42 U.S.C.A §1981a *et. seq.*; and South Dakota Human Rights Act (SDHRA), SDCL § 20-13.

(5) For such further relief as the Court deems proper.

Dated this 12th day of June, 2013.

JOHNSON, HEIDEPRIEM, & ABDALLAH, LLP

BY *[signature]*
Pamela R. Bollweg (Pamela@jhalawfirm.com)
P.O. Box 2348

Sioux Falls, SD 57101-2348
(605) 338-4304

**JOHNSON & CHRISTENSEN LAW OFFICE, PC**
Renee Christensen
(renee@siouxfallslaw.com)
P.O. Box 2315
Sioux Falls, SD 57101-2315
(605) 335-1778

*Attorneys for the Plaintiff*

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby respectfully demands a trial by jury on all issues so triable.

*[signature]*
Pamela R. Bollweg